DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtors*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Erica R. Aisner, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

ASANDA, INC.

                    Debtor.
-----------------------------------------------------------X
In re:

ASANDA PARK AVENUE, INC.

                    Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 17-10054 (jlg)

Chapter 11
Case No. 17-10055 (jlg)

## DECLARATION OF GENE FRISCO PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1 IN SUPPORT OF AN ORDER SCHEDULING HEARING ON <u>SHORTENED NOTICE FOR FIRST DAY MOTIONS</u>

GENE FRISCO, being duly sworn, upon the penalties of perjury, hereby declares and states:

1. I am the Managing Director of Asanda Inc. ("Asanda") and Asanda Park Avenue Inc. ("Park Avenue")(Park Avenue and Assanda are collectively referred to as the "Debtors") in the above captioned proceedings. I am fully familiar with the Debtor's business affairs and operations, and am duly authorized to make this Declaration on the Debtors' respective behalves.

2. I submit this Declaration (a) in support of the Debtors' voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), (b) to

assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of the Chapter 11 cases, and (c) to provide general information about the Debtors' business operations.

3. Part I of this Declaration provides an introduction and background to the Debtors and the Chapter 11 cases and describes the circumstances giving rise to their commencement. Part II of this Declaration sets forth the information required by Local Bankruptcy Rule for the Southern District of New York ("Local Rule") 1007-2. Part III sets forth a summary of the First Day Motions and the basis for the request for a hearing on shortened notice on the First Day Motions.

## I. INTRODUCTION

4. On January 11, 2017 (the "Filing Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5. Since the Filing Date, the Debtors have remained in possession of their assets and continued to manage their business affairs as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. Asanda is a New York corporation formed in November of 2011 by Luis Daniel Balarezo. Asanda, which opened for business in May 2012, operates a full service luxury salon and spa at 598 Broadway, New York, NY 10012 and operates as *Asanda Aveda Spa Lounge.*

7. Park Avenue is a Delaware corporation formed in January, 2014 by Luis Daniel Balarezo. Park Avenue is the owner of a second location of the *Asanda Aveda Spa Lounge* at 120 East 56th Street, New York, NY 10022. Although separate entities and operations, Asanda serves as the administrator and employer for both locations and the operations are run

substantially as a consolidated entity.

8. Asanda successfully opened in May of 2012 with great public response and press. With a rapidly growing client base, Asanda quickly earned a strong reputation. When it opened, Asanda had six salon chairs and four spa treatment rooms but due to the great success over the first two years of operations, its revenues went from approximately $465,000 in 2012 to nearly $1.5 million in 2013. This success prompted Asanda's expansion from its initial 2,500 square feet of leased space to the entire third floor at 598 Broadway (5,000 sq. ft.) with nineteen chairs and twelve treatment rooms, making it one of the largest salon and spa locations in New York City.

9. Using the great success and excellent reputation of Asanda as a springboard, Mr. Balarazo decided to open a second location which would be owned by Park Avenue. A lease was negotiated for 5,000 square feet of space with highly visible 60 linear fee of glass store front on the second floor at the prominent location of Park and 56th Street.

10. Initially Park Avenue had secured financing from a private investor in the amount of $750,000 which was intended to fund a high end build-out. Sadly, after only two months into construction, the financing commitment was withdrawn due to the investor's fatal cancer diagnosis. In response, the Debtors scaled back the build-out and opened their second location in May of 2014.

11. Unfortunately, in September of 2014, as the company began the design and construction of its signature window awnings, the Debtors were notified that they should not bother proceeding on that front because the adjoining building at 425 Park Avenue was being demolished and scaffolding would be constructed in the front of the building which would

3

prevent any awnings or signage from being visible to the street. This information came as a complete shock since visibility was key in the selection of the Park Avenue location and the signage, which is the Debtors' best marketing tool, were both central to the lease negotiations. Despite these extraordinary challenges, the Debtors reported consolidated revenues for 2014 in the amount of $4.2 million.

12. In June of 2015, the developer for 425 Park began erecting the feared scaffolding in front of the building and worse, on the terrace area as well which was also part of the Debtors' leased space- a critical part. As the landlord was well aware from their extensive lease negotiations and the inclusion of construction plans in the lease, the Debtors intended to enclose the terrace with glass. As a result, the Debtors were unable to complete the construction of the terrace enclosure which was intended to be a nail spa which is a crucial new client acquisition tool already proven in the Asanda location in SoHo.

13. Ultimately, the Debtors learned that the Park Avenue landlord and the landlord for 425 Park were parties to an agreement that predated the Debtors' Park Avenue lease! Unbelievably, the agreement related to the demolition of 425 Park and, among other things, the scaffolding, which directly interfered with if not totally prohibited the Debtors' erection of critical awnings and signage as well as the enclosure and usage of the terrace area.

14. Then, in February 2016, due to the landlord's actions, the Park Avenue location suffered a major catastrophe. When the 425 Park building was finally demolished, the west wall of the Debtors' building was exposed to the elements as it had never been before. As a result of the landlord's failure to protect the water risers, the pipes from the ground floor to the fourth floor of the building burst, causing a devastating flood in the Debtors' space as well as common

areas of the building and elevators. This flood was the proverbial straw.

15. The Park Avenue location was entirely shut down for a week due to the flood. However, the elevators for the building were inoperable for a month during which time the Debtors' customers had to utilize the fire stairs which exited into the spa treatment waiting room which is not typically a "public area." As a result, a treatment had to be closed so that it could be repurposed as the waiting area which meant a further loss of revenues. Customers repeatedly complained about the stairs and a persistent mold small which negatively impacted business. These complaints made their way to the internet and specifically the highly visible Yelp website which further negatively impacted the Debtors' business. The landlord's repairs to the building required an entire bathroom in the Debtors' space to be demolished which resulted in two additional treatment rooms to be largely unusable to this day.

16. Although the landlord is liable under the lease for the catastrophe, it has refused to complete the repairs or to make a claim under its insurance coverage for the Debtors' damages. The Debtors made a number of attempts to negotiate a concession with the landlord that would compensate the Debtors for the loss of use of multiple areas of the leased space including revenue generating areas as well as visibility and signage. Unfortunately, each and every attempt has been unsuccessful.

17. Instead, the landlord has made its position clear – the landlord wants the space back as it believes that it can secure a significantly higher price per square foot once the new building is erected at 425 Park. In fact, the landlord has even offered to "let the Debtor out of its lease" which is completely unacceptable to the Debtors given the significant investment that has already been made at that location. The landlord has advised the Debtors that if they persist, they

will simply "out litigate" and "out spend" the Debtors because they have deeper pockets!

18. Fearing no other alternative, Park Avenue filed a lawsuit against the landlord in Supreme Court on its multiple claims including but not limited to declaratory and equitable relief and a suspension of its obligation to pay rent. In response, the landlord commenced a separate summary proceeding for non-payment of rent and is aggressively pursuing eviction. The landlord has held true to its promise and now has the Debtors (specifically Park Avenue) litigating in two venues. The Supreme Court case against the landlord is only in its nascent stages and discovery has not even begun. Meanwhile, a trial is scheduled for Friday, January 13, 2017 in landlord tenant court which could result in the Debtors' eviction. Without the protections of the Bankruptcy Court, Park Avenue could face the unjust result of being evicted prior to having its material claims against the landlord adjudicated.

19. In addition to these serious issues at the Park Avenue location and as a direct result, the Debtors have suffered cash flow shortages and recently fell behind on their tax obligations. With the Park Avenue operations hamstrung as they have been and the need to devote so much of their cash resources to fighting two litigations, the Debtors have been unable to stay current on its federal tax obligations. In December of 2016, the Internal Revenue Service filed a lien for taxes due in excess of $300,000 which has further threatened the Debtors' operations.

20. The Debtors intend to utilize the bankruptcy process in order to stave off foreclosure and gain breathing room from their creditors while they resolve their numerous and complex issues with the Park Avenue landlord. Meanwhile, the Debtors who believe they can operate profitably, will also gain the opportunity to pay their tax obligations over time and

restructure both their secured and investor debt in such a way as to protect the Debtors cash flow on a going forward basis.

## II. INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007-2

21. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors, which is set forth below.

**Local Rule 1007-2(a)(1)**

22. The Debtors operate two (2) full service salon/ spas in New York City.

**Local Rule 1007-2(a)(2)**

23. These Chapter 11 cases were not originally commenced under Chapter 7 or 13 of the Bankruptcy Code.

**Local Rule 1007-2(a)(3)**

24. Upon information and belief, no committee was organized prior to the order for relief in these Chapter 11 Cases.

**Local Rule 1007-2(a)(4)**

25. A list of the Debtors' respective twenty largest unsecured creditors are annexed hereto as **Exhibit "A"**.

**Local Rule 1007-2(a)(5)**

26. A list of Asanda's five (5) largest secured creditors is annexed hereto as **Exhibit "B"**.

27. Park Avenue does not have any secured creditors.

**Local Rule 1007-2(a)(6)**

28. A consolidated list of the Debtors' assets and liabilities is annexed hereto as

7

Exhibit "C".

**Local Rule 1007-2(a)(7)**

29. There are no publicly held securities of either Debtors.

**Local Rule 1007-2(a)(8)**

30. None of the Debtors' property is currently in the possession or custody of any third party.

**Local Rule 1007-2(a)(9)**

31. Asanda operates its business from a leased premises located at 120 East 56th Street, New York, NY 10022. Park Avenue operates its business from a leased premises located at 598 Broadway, New York, NY 10012.

**Local Rule 1007-2(a)(10)**

32. The Debtors' assets are maintained at each leased premises at which the respective Debtor operates. The books and records for the Debtors are maintained both at the locations and in the "cloud."

**Local Rule 1007-2(a)(11)**

33. The following actions or proceedings are pending concerning Park Avenue:

*Asanda Park Avenue, Inc. and Gene Frisco v. 120 East 56th Street, L.L.C.*, Supreme Court of the State of New York, County of New York, Index No. 653623/2016

*120 East 56th Street LLC v. Asanda Park Avenue, Inc.*, New York City Civil Court, Index No. LT-070422-16

**Local Rule 1007-2(a)(12)**

34. Gene Frisco is the managing director of both Debtors and he is the only individual at the senior management level. Mr. Frisco has extensive business experience not only in the

salon and spa industry but in numerous other industries. He has developed expertise in brand and digital marketing, technology and finance and has been involved in start-up companies, large and small as well as numerous restructurings.

**Local Rule 1007-2(b)(1), (2) and (3)**

35. The estimated monthly payroll for the Debtors' employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Filing Date is $150,000.00.

36. The estimated monthly payroll for the Debtors' insiders is $8,000.00.

37. A schedule of estimated cash receipts and disbursements is annexed hereto as **Exhibit "D"**.

### III. FIRST DAY MOTIONS AND BASIS FOR REQUEST FOR HEARING ON SHORTENED NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1

38. Contemporaneously with this Chapter 11 filing, the Debtor expects to file the following two motions which relief is being sought on shortened notice (the "First Day Motions") as follows:

- Debtors' Motion for an Order authorizing the Debtor to (a) satisfy and, to the extent applicable, directing any payroll banks to honor pre-petition gross salaries, payroll taxes and related obligations to or for the benefit of the Debtors' employees, and (b) honor, in its discretion, pre-petition sick, vacation, personal, and similar themed days; and (ii) granting other related relief (the "**Employee Wages Motion**"); and

- Debtor Asanda's Motion for an Order (A) authorizing the use cash collateral pursuant to 11 USC §363; (B) approving adequate protection pursuant to 11 USC §361; and (C) scheduling a final hearing (the "**Cash Collateral Motion**").

39. The relief sought in the First Day Motions is immediately necessary to enable the Debtors to operate effectively as debtors-in possession following the commencement of these chapter 11 cases.

40. The purposes of the First Day Motions include, among other things, to: (a) ease the Debtors' transition into Chapter 11 and mitigate potentially adverse effects of the Chapter 11 filings; (b) minimize disruption of the Debtors' ability to operate in the ordinary course of business; and (c) maintain and bolster employee morale so as to reduce employee attrition during the Debtors' Chapter 11 proceedings, which would have a detrimental impact on the Debtors' business and customer service. Each of the First Day Motions is crucial to the Debtors' restructuring efforts and preservation of the Debtors' assets and estates.[1]

41. I submit that the relief request in the First Day Motions should be heard and determined on an expedited basis in order to allow the Debtors to continue their normal business operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

### A.    Employee Wages Motion

42. Due to the timing of this Chapter 11 filing, the Debtors respectfully request, among other things, entry of the Interim Order authorizing the Debtors to satisfy and, to the extent applicable, directing any payroll banks to honor, certain pre-petition gross salaries and payroll taxes for their employees (the "**Interim Order**") submitted herewith.

43. The Debtors' employees are critical and necessary for the Debtors' ongoing operations. Should the Debtors be rendered unable to pay their employees' wages as scheduled,

---

[1] For a more detailed description of the First Day Motions, the Debtors respectfully refers the Court and parties-in-interest to the respective First Day Motions.

10

there would be irreparable harm caused to the employee morale and possible loss of employees. Should this happen, the Debtors' reorganization efforts would certainly be impaired.

**B.    Cash Collateral Motion**

44.    As set forth more fully in the Motion for Authority to Use Cash Collateral filed in connection herewith, Debtor Asanda[2] has two secured creditors, On Deck Capital, Inc. and American Express Bank FSB (collectively, the "Secured Creditors") who have liens on the Debtor's cash as well as its other personal property.

45.    Furthermore, the Internal Revenue Service filed a lien on the Debtor's assets on December 13, 2016.

46.    In order to protect the Debtor and enable it to reorganize, it is critical that there be no upset or interference with its ordinary course operations. The Debtor must be able to continue to pay its employees and suppliers going forward, the failure of which could result in a disruption of service to its customers which would be detrimental to the Debtor and severely hamper the Debtor's efforts to reorganize.

47.    Shortened notice is necessary as the Debtor requires immediate authorization to use cash which may constitute the collateral of the Secured Creditors. Most urgently, the Debtor must pay its employees on Friday, January 13, 2017, as discussed herein. Items such as rent, insurance and utilities are also crucial to the continued operations and if the Debtor were unable to use its cash during the next few weeks, it would suffer irreparable harm.

**C.    Conclusion**

48.    The First Day Orders will enable the Debtors to stabilize and continue its operations in the ordinary course while the Debtors attempt to reorganize under the Bankruptcy

Code. Accordingly, the Debtors respectfully request that the Court enter those Orders.

49.    I believe that good cause exists to have a hearing on the First Day Motions which typically requires a minimum of fourteen (14) days' notice as provided for in Federal Rule of Bankruptcy Procedure 2002 and 4001.

## **CONCLUSION**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
January 11, 2017

>   */s/ Gene Frisco*
>   Gene Frisco

# EXHIBIT A

**20 Largest Unsecured Creditors**

**See Attached**

Fill in this information to identify the case:
Debtor name: Asanda Inc.
United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK
Case number (if known): 17-10054

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Concept Heaven<br>515 Broadway Ste 1AF<br>New York, NY 10012 | | | | | | $512,604.00 |
| Rhonda Schladerbach<br>130 W 24th Street<br>New York, NY 10011 | | | | | | $334,000.00 |
| Robin Connors<br>503 Lass Brass Ct<br>Peachtree City, GA 30269 | | | | | | $110,000.00 |
| NYS Dept of Tax & Finance<br>Bankruptcy Special Procudres<br>15 Metro Tech Center, 5th Fl.<br>Brooklyn, NY 11201 | | | | | | $50,000.00 |
| 598 Broadway Realty Assoc, Inc<br>PO Box 514 Prince St Station<br>attn: Steven Mosery, President<br>New York, NY 10012 | | | | | | $50,000.00 |
| Joshua Vasbinder<br>131 W 75th Street #2B<br>NY | | | | | | $42,600.00 |
| Saint Hung<br>425 5th Avenue #18E<br>New York, NY 10016 | | | | | | $42,600.00 |
| Kerry Bunday<br>3460 119th Avenue NE<br>Bellevue, WA 98005 | | | | | | $35,000.00 |

Official form 204        Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims        page 1

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Debtor   Asanda Inc.                                                    Case number *(if known)*   17-10054
         Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| NYS Dept of Tax & Finance<br>Bankruptcy Special Procudres<br>15 Metro Tech Center, 5th Fl.<br>Brooklyn, NY 11201 | | | | | | $24,000.00 |
| R&R Commercial Service<br>9116 3rd Avenue Apt. 1R<br>Brooklyn, NY 11209 | | | | | | $20,000.00 |
| Julie A Mosery<br>PO Box 616<br>New York, NY 10014 | | | | | | $7,000.00 |
| Chad A Mosery<br>PO Box 615<br>New York, NY 10013 | | | | | | $7,000.00 |
| Jared R. Mosery<br>PO Box 614<br>New York, NY 10012 | | | | | | $7,000.00 |

# EXHIBIT B

## Five Largest Secured Creditors

| | |
|---|---|
| American Expess Bank FSB<br>c/o Datamark Inc.<br>43 Butterfield Cir<br>El Paso TX 79906 | $80,000.00 |
| On Deck Capital<br>901 North Stuart Street<br>Ste 700<br>Arlington VA 22203 | $80,000.00 |

# EXHIBIT C

Asanda Inc. Asasda Park Ave Inc.  
Balance Sheet  
December 31, 2016

Accrual Basis

| | |
|---|---:|
| **ASSETS** | |
|     Checking/Savings | -14,473.58 |
|     Inventory | 220,778.12 |
|   Total Current Assets | 206,304.54 |
|   Total Fixed Assets net of Depreciation | 1,370,288.54 |
|   Other Assets | 52,000.00 |
| **TOTAL ASSETS** | **1,628,593.08** |
| **LIABILITIES & EQUITY** | |
|   **Liabilities** | |
|     Accounts Payable | 30,000.00 |
|     Loans Payable | 1,221,745.96 |
|     NYS Sales Tax | 24,000.00 |
|     Payroll Liabilities | 330,000.00 |
|   **Total Liabilities** | **1,605,745.96** |
|   **Equity** | |
|     Retained Earnings | 198,778.12 |
|     Net Income | -175,931.00 |
|   **Total Equity** | **22,847.12** |
| **TOTAL LIABILITIES & EQUITY** | **1,628,593.08** |

**EXHIBIT D**

16

Asanda Inc
Asanda Park Ave
13 Week Budget

| | Wk 1 1/13 | Wk 2 1/20 | Wk 3 1/27 | Wk 4 2/3 | Wk 5 2/10 | Wk 6 2/17 | Wk 7 2/24 | Wk 8 3/3 | Wk 9 3/10 | Wk 10 3/17 | Wk 12 3/24 | Wk 13 3/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPENING BALANCE | $42,293 | $6,454 | $53,271 | $19,767 | $22,192 | $25,728 | -$4,126 | $48,307 | $62,070 | $63,606 | $26,752 | $90,685 |
| Cash and Credit Cards | $12,010 | $60,000 | $67,000 | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 |
| **Voucher Receipts** | | | | | | | | | | | | |
| Groupon | $0 | $30,000 | $0 | $30,000 | $0 | $0 | $30,000 | $30,000 | $0 | $0 | $30,000 | $0 |
| Living Social (LSS) | $0 | $6,000 | $0 | $0 | $0 | $0 | $6,000 | $0 | $0 | $0 | $5,000 | $0 |
| Amazon | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Yelp | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| DC & DV & GC (MTOT) | $464 | $2,469 | $1,536 | $1,844 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| VIVE (Stripe Des) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| GILT | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other - Refund or Transfer | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| SUBTOTAL | $464 | $38,469 | $1,536 | $31,844 | $1,500 | $1,500 | $37,500 | $31,500 | $1,500 | $1,500 | $36,500 | $1,500 |
| TOTAL CASH RECEIPTS | $12,474 | $98,469 | $68,536 | $102,844 | $72,500 | $72,500 | $108,500 | $102,500 | $72,500 | $72,500 | $107,500 | $72,500 |
| **Cash Expenses** | | | | | | | | | | | | |
| TOTAL RETAIL & BACKBAR | $10,000 | $26,065 | $5,500 | $6,000 | $5,500 | $13,000 | $13,000 | $5,500 | $7,500 | $13,000 | $7,500 | $5,500 |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| **G&A** | | | | | | | | | | | | |
| Advertising | $532 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Fees | $0 | $0 | $226 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Bank Service Charges | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Meals and Entertainment | $0 | $0 | $0 | $500 | $0 | $0 | $0 | $500 | $0 | $0 | $0 | $500 |
| Office Expense | $0 | $0 | $0 | $500 | $0 | $0 | $0 | $500 | $0 | $0 | $0 | $500 |
| Travel | $0 | $0 | $0 | $300 | $0 | $0 | $0 | $300 | $0 | $0 | $0 | $300 |
| SUBTOTAL | $532 | $0 | $226 | $1,300 | $0 | $0 | $0 | $1,300 | $0 | $0 | $0 | $1,300 |
| | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| OPERATING EXPENSES | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **OTHER EXPENSES** | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Merchant Fees | $0 | $0 | $0 | $60 | $0 | $4,550 | $0 | $60 | $0 | $4,550 | $0 | $0 |
| Payroll Expenses | $29,250 | $20,618 | $54,382 | $43,763 | $29,250 | $43,763 | $29,250 | $43,763 | $29,250 | $43,763 | $29,250 | $43,763 |
| Payroll Advance | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll- Housekeeping | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payroll - Reimbursement | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Wageworks & Other Exp | $0 | $0 | $0 | $120 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 |
| Fed Taxes Employer | $0 | $0 | $19,500 | $19,500 | $0 | $19,500 | $0 | $19,500 | $0 | $19,500 | $0 | $19,500 |
| Fed Taxes Employee | $0 | $0 | $11,750 | $11,750 | $0 | $11,750 | $0 | $11,750 | $0 | $11,750 | $0 | $11,750 |
| State Taxes Employer | $0 | $0 | $1,384 | $1,384 | $0 | $1,384 | $0 | $1,384 | $0 | $1,384 | $0 | $1,384 |
| State Taxes Employee | $0 | $0 | $3,263 | $3,263 | $0 | $3,263 | $0 | $2,000 | $0 | $3,263 | $0 | $3,263 |
| Director Wages | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| Salon Supplies | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Insurance | $0 | $0 | $618 | $2,005 | $1,244 | $1,394 | $618 | $2,005 | $1,244 | $1,394 | $618 | $0 |
| Internet Expense | $397 | $397 | $0 | $0 | $796 | $0 | $0 | $0 | $796 | $0 | $0 | $0 |
| Permit & License | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Telephone Communication | $0 | $172 | $179 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Call Center | $0 | $1,850 | $0 | $7,500 | $0 | $0 | $0 | $7,500 | $0 | $0 | $0 | $0 |
| Rent | $0 | $0 | $0 | $0 | $29,000 | $0 | $0 | $0 | $29,000 | $0 | $0 | $0 |
| Utilities | $0 | $0 | $2,498 | $0 | $3,224 | $0 | $1,683 | $0 | $3,224 | $0 | $1,683 | $0 |
| Garbage | $0 | $0 | $0 | $164 | $0 | $0 | $0 | $164 | $0 | $0 | $0 | $0 |
| Software | $1,068 | $0 | $190 | $0 | $0 | $0 | $766 | $0 | $0 | $0 | $766 | $0 |
| Business & Legal Fees | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Bookkeeping | $0 | $0 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Repairs and Maintenance | $4,550 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Dues and Subscriptions | $0 | $0 | $0 | $60 | $0 | $0 | $0 | $60 | $0 | $0 | $0 | $0 |
| Postage, printing, other | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Taxes | $0 | $0 | $0 | $0 | $0 | $0 | $7,000 | $0 | $0 | $7,000 | $0 | $0 |
| SUBTOTAL | $37,265 | $25,037 | $95,763 | $92,570 | $62,914 | $88,804 | $42,517 | $89,387 | $62,914 | $95,804 | $35,517 | $81,860 |
| TOTAL EXPENSES | $37,798 | $25,037 | $95,990 | $93,870 | $62,914 | $88,804 | $42,517 | $90,687 | $62,914 | $95,804 | $35,517 | $83,160 |
| OPERATING CASH FLOW | -$35,289 | $47,367 | -$32,954 | $2,974 | $4,087 | -$29,304 | $52,983 | $6,313 | $2,087 | -$36,304 | $64,483 | -$16,160 |
| **CAPITAL EXPENDITURES** | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Construction | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Contractors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| SUBTOTAL | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **FINANCING ACTIVITIES** | | | | | | | | | | | | |
| US Trustee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| OnDeck / AMEX | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 |
| SUBTOTAL | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 |
| NET CASH FLOW | -$35,839 | $46,817 | -$33,504 | $2,424 | $3,537 | -$29,854 | $52,433 | $5,763 | $1,537 | -$36,854 | $63,933 | -$16,710 |
| BEGINNING BALANCE | $30,530 | $6,454 | $53,271 | $19,767 | $22,192 | $25,728 | -$4,126 | $48,307 | $62,070 | $63,606 | $26,752 | $90,685 |
| ENDING BALANCE | $6,454 | $53,271 | $19,767 | $22,192 | $25,728 | -$4,126 | $48,307 | $62,070 | $63,606 | $26,752 | $90,685 | $73,975 |